UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMARAL ENTERPRISES LLC,           )
                                  )
          Plaintiff,              )
                                  )
v.                                )          Action No. 17-cv-30053-KAR
                                  )
CHARLES J. GIAN, et al.,          )
                                  )
          Defendants.             )


MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(Dkt. Nos. 43 & 64)


ROBERTSON, M.J.

    I.   INTRODUCTION

        Plaintiff Amaral Enterprises LLC ("Plaintiff") filed this eight-count complaint against

defendant Charles J. Gian in his individual, managerial, and trustee capacities,[1] challenging a

special assessment imposed by the Morningside Plaza Condominium Association ("MPCA").

The genesis of this suit, and a number of other suits filed by Plaintiff, its related entities, and

Brian Amaral, Plaintiff's sole manager, was a frozen pipe that burst on February 19, 2013, in a

common area of the Morningside Plaza building in Pittsfield, causing water damage to a

commercial bakery operated by Bearbones, Inc., d/b/a/ Morningside Bakery, in the condominium

unit owned by Plaintiff.  Now before the court are Defendants' Motion for Summary Judgment

_____

[1] The Complaint names Charles J. Gian; Charles J. Gian, Trustee Morningside Plaza Nominee
Trust; and Charles J. Gian, Manager Morningside Plaza Condominium Association.  Mr. Gian, in
his various capacities, is referred to herein as "Gian" or "Defendants."

1

(Dkt. No. 43) and Plaintiff's Motion for Preliminary Injunction (Dkt. No. 64).[2]  The parties have

consented to this court's jurisdiction (Dkt. No. 7).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons set forth below, the court will grant Defendants' motion and deny Plaintiff's

motion.

II.  <u>BACKGROUND</u>

A.  <u>MPCA Agreement and Bylaws</u>[3]

The Trustees of the Morningside Plaza Nominee Trust, Charles Gian and Satrina Panetti,

created the MPCA on February 14, 1990.  The MPCA Agreement of Association and Bylaws

submitted "the property described in said Master Deed" "to the provisions of Chapter 183A of

the Massachusetts General Laws" (Agreement at 1)[4] and stated that "[t]he Condominium shall

not be removed from the provisions of the Condominium Law except in compliance with the

procedure therefor established in Section 19 of the Condominium Law" (Agreement, Article

XIV, at 28).

---

[2] The court determined that a hearing on Plaintiff's motion for a preliminary injunction would
not assist the court and has exercised its discretion to rule on the motion without a hearing.  *See*
Local Rule 7.1(e).

[3] The background and facts set forth herein are drawn primarily from documents submitted as
exhibits to the parties' various filings, supplemented to a limited extent by facts drawn from the
Affidavit of Charles J. Gian (Dkt. No. 45-2) (hereinafter, "Gian Aff."), the Defendants'
Statement of Material Facts as To Which There Are No Genuine Issues To Be Tried and
Responses Thereto by Plaintiff (Dkt. No. 59), and facts noted in the court's prior discovery
rulings.  The authenticity of the documents on which the court relies is not contested.  Plaintiff's
request – not properly framed as a motion – that the court strike or disregard Gian's affidavit
(Dkt. No. 55 at 17), is denied for reasons previously set forth in the court's August 14, 2018
Memorandum and Order (Dkt. No. 48).  The court does not accept Gian's claimed good faith as
an uncontested fact.

[4] The Morningside Plaza Condominium Agreement of Association and By-Laws, referenced
herein as "Agreement," is at Docket No. 44-1.  References are to the Agreement section and
page of the document.

2

The Agreement provided for the election of a Board of Managers ("Board") to be comprised of three representatives, consisting of Gian, an individual who would be designated by the purchaser of Unit 1, and an individual who would be designated by the purchaser of Unit 5 (Agreement 3.2 at 3-4). Meetings of the Board were to be held from "time to time" as determined by a majority of the Managers, but at least once each fiscal year. "Notice of regular meetings of the Board [were to] be given by the Clerk of the Condominium Association to each Manager by mail or telephone at least three (3) business days prior to the day named for such meeting" (Agreement 3.7 at 5). Special meetings could be called by the President with three-days' notice to each Manager that stated the time, place, and purpose of the meeting (Agreement 3.8 at 5). The Agreement permitted the appointment of a manager or managing agent who would be responsible for maintenance and operation of the common areas and facilities (Agreement 2, 3.15 at 7-8).

The Board had – among others – the power and duty "[t]o initiate, prosecute and defend suits at all trial and appellate levels on behalf of the Condominium Association in the exercise of its power, … including the power to settle suits brought by or against the Condominium Association and the defense of suits brought against the Condominium Association involving the Common Areas and Facilities or any other matters" (Agreement 3.15.13(m) at 8). The Agreement addressed the personal liability of the Managers as follows:

> No manager shall under any circumstance or in any event be held liable or accountable out of his personal assets by reason of any action taken, suffered or omitted by him in good faith while serving as Manager, … or be so liable, accountable or deprived by reason of honest errors of judgment or mistakes of fact or law, except for willful acts in bad faith.

(Agreement 3.12 at 7). The Agreement further provided that the Unit Owners, to the extent of unit ownership, would indemnify the Board of Managers and each Manager against any liability

incurred by him or her or any of them in carrying out his or her duties as Manager (Agreement 3.12, 3.14 at 6, 8).

Unit Owners were responsible for the common expenses of the condominium. The Agreement provided that assessments were to be made at least thirty (30) days before the start of the fiscal year (which was the calendar year) and were to be calculated by the Board based on an estimate of the common expenses expected to be incurred with a reasonable provision for contingencies and taking into account undistributed common profits from prior years, if any (Agreement 7.1 at 13). If the estimated budget did not cover common expenses actually incurred, then the Board could "make a supplemental assessment or assessments and render statements therefor which shall be due and payable within thirty (30) days" (Agreement 7.1 at 14). The amount charged annually to each Unit Owner was to "be a personal liability of the Unit Owner and if not paid when due shall … carry a late charge at a rate equal to eighteen percent (18%) per annum. All such charges (and the cost of collection thereof) [would] constitute a lien on the Unit of the Owner assessed pursuant to provisions of Section 6 of the Condominium law [Mass. Gen. Laws ch. 183A, § 6]" (Agreement 7.1 at 14).

Among the common expenses identified in the Agreement were "amounts deemed appropriate by the Board for the operation, maintenance, upkeep and repair of the Common Areas and Facilities and for the activities of the Condominium Association, including but not limited to … costs of repairs, replacements and additions to the Common Areas and Facilities, including … maintenance of parking areas … [and] legal and audit expenses of the Condominium Association" (Agreement 7.1.2 at 14-15). The Agreement called for the purchase by the Board of insurance including "[f]ire with extended coverage insuring the premises, including Common Areas and Facilities and all of the Units and excluding only personal

property of the Unit Owners therein, covering the interests of the Condominium, the Board and all Unit Owners" (Agreement 7.11.1 at 19-20).

B. Additional Relevant Factual Background

Plaintiff owns one of five condominium units in Morningside Plaza. Gian, in his capacity as a Trustee of the Morningside Plaza Nominee Trust ("MPNT"), is the owner of the legal interest in the remaining four condominium units in the building (Dkt. No. 59, ¶ 7 at 3). Plaintiff, which owns Unit 5, and Gian are Managers of MPCA (Agreement 3.3 at 4). Gian admits that, as an MPCA Manager, he may have had an obligation under the Agreement to obtain insurance for the common areas of Morningside Plaza (Gian Aff. ¶ 5 at 2). It is undisputed that Gian insured his units (Gian Aff. ¶ 7 at 2). According to Gian, he obtained insurance for the entire square footage of the building and wrongly believed that the insurance covered the building's common areas (Gian Aff. ¶¶ 6-8 at 2).

On or around October 4, 2013, following the February 19, 2013 damage to Plaintiff's condominium unit, Plaintiff filed suit in the Superior Court Department of the Massachusetts Trial Court in Suffolk County, bringing claims under Massachusetts General Laws Ch. 183A, § 13 against, among others, Gian in his capacities as Manager of the MPCA and Trustee of the MPNT (Dkt. No. 45-5). Plaintiff sought to recover consequential damages for Gian's failure to purchase common area insurance (Dkt. No. 45-5 at 16). On March 17, 2017, this suit was dismissed with prejudice for failure to prosecute (Dkt. No. 46-9). On or around February 12, 2016, Plaintiff filed a shareholder derivative suit in the Superior Court in Berkshire County naming, among others, Gian individually and Gian in his capacities as Manager of the MPCA and Trustee of the MPNT. This Berkshire County action seeks recovery, purportedly on behalf

of the condominium association, for losses arising from Gian's failure to purchase common area insurance and other MPCA losses (Dkt. No. 44-6). This suit remains pending.

On January 19, 2017, the MPCA approved an additional or special assessment for "roof repair, parking area repair and for the legal fees incurred in the litigation in which the condominium was involved" (Gian Aff. ¶¶ 15-16, Dkt. No. 66-6). An undated document entitled "Budget for the Morningside Plaza Condominium Association" shows a $37,000 cost for roof repair; a $23,500 cost for parking area repair; a $136,000 cost for "Legal Fees for Condo Litigation;" and a $20,000 cost for "Berkshire County Condo Association Legal Fees" (Dkt. No. 66-6 at 2). The parties dispute whether Plaintiff received the notice required under the Agreement of the meeting at which the vote was taken approving the special assessment. It is undisputed that, on February 17, 2017, without conceding improper notice, defense counsel proposed to Plaintiff's counsel that the MPCA meeting be rescheduled and a new vote taken on the special assessment (Dkt. No. 45-10). Plaintiff refused the offer of another MPCA meeting (Gian Aff. ¶ 25).

Plaintiff filed this suit on or around April 28, 2017, seeking a declaratory judgment that the portion of the special assessment charged to it – calculated by the MPCA at $80,105.00 – was either void or assessed in bad faith to facilitate a foreclosure (Dkt. No. 1 at 1; Dkt. No. 66-6 at 2). Plaintiff alleges that Gian, individually, as a Manager of the MPCA, and as a Trustee of the MPNT, improperly caused Plaintiff to be assessed $80,105.00 to pay a portion of the legal fees the MPCA has incurred defending against the multiple suits filed by Plaintiff arising from the February 19, 2013 incident. According to Plaintiff, the special assessment arises from Gian's failure to procure insurance for the common areas of the Morningside Plaza building in compliance with the MPCA Agreement notwithstanding that Plaintiff allegedly paid for such

6

insurance in conjunction with its purchase of Unit 5 (Compl. at 5-6, ¶¶ 14, 18). Plaintiff alleges that at no time between October 4, 2013, when Plaintiff filed suit in Suffolk Superior Court, and February 3, 2017, when Plaintiff was notified of the special assessment, did Gian or anyone acting on his behalf notify Plaintiff of the intended special assessment (Compl. at 5, ¶ 17).

Plaintiff's complaint seeks relief in eight counts:

- Count I seeks a declaratory judgment that Plaintiff has no obligation to pay the $80,150.00 special assessment because Defendants' failure to obtain appropriate insurance was the "proximate cause of the overall Special Assessment and such an intervening act terminates" Plaintiff's liability (Compl. at 6, ¶ 21);

- Count II states a claim of promissory estoppel or detrimental reliance on the grounds that Defendants failed to acquire casualty insurance as promised by the Agreement and "failed to sue those persons/entities who were responsible for the lack of insurance though Defendants knew such a claim was viable" (Compl. at 6-7, ¶ 23);

- Count III states a claim that Defendants breached a contract with Plaintiff by their failure to obtain common area insurance in compliance with the Agreement, thereby excusing Plaintiff's obligation to pay the special assessment (Compl. at 7-8, ¶ 27);

- Count IV states a claim under Massachusetts General Laws ch. 93A, §§ 2 and 11 ("Chapter 93A") for demanding payment of the Special Assessment, for collecting money for insurance that was not purchased, for denying Plaintiff access to the books and records of the MPCA, and for chilling Plaintiff's rights to petition (Compl. at 8, ¶ 29);

- Count V states a claim for breach of the implied covenant of good faith and fair dealing for the failure to purchase common area insurance for which Plaintiff allegedly paid (Compl. at 8, ¶ 31);

- Count VI states a claim for fraud for the imposition of the special assessment without proper notice to Plaintiff of the MPCA meeting (Compl. at 8-9, ¶¶ 33-35);

- Count VII states a claim for an accounting as to the basis of the special assessment charged to Plaintiff (Compl. at 10, ¶ 37); and

- Count VIII states a claim for a preliminary injunction to preclude seizure of Plaintiff's condominium based on the failure to pay the special assessment (Compl. at 10, ¶ 38).

Plaintiff filed a motion for a preliminary injunction on October 21, 2018 (Dkt. No. 64).

III.     <u>Discussion</u>

A.   <u>Defendants' Motion for Summary Judgment</u>

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.,* 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations and citation omitted). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the summary judgment context, "[a] factual dispute is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations and internal quotation marks

omitted)). "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the outcome of the suit.'" *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (citing *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).

A party seeking summary judgment is responsible for identifying those portions of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). In ruling on summary judgment, the court "view[s] 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" *Padilla-García v. Guillermo Rodríguez*, 212 F.3d 69, 73 (1st Cir. 2000) (quoting *Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir. 1998)).

Defendants seek judgment on the basis that (1) some of Plaintiff's claims are barred by claim preclusion; and (2) Plaintiff lacks standing to challenge the special assessment under any legal theory because it has not paid the special assessment or obtained a prior judicial determination of illegality. *See Blood v. Edgar's, Inc.*, 632 N.E.2d 419, 421-22 (Mass. App. Ct. 1994); *see also Wodinsky v. Kettenbach*, 22 N.E.3d 960, 972-73 (Mass. App. Ct. 2015).

1. Claim Preclusion Does Not Bar Any Claims Asserted in the Instant Action

Gian asserts that claim preclusion bars Counts II, III and V of the complaint because those claims seek damages based on Gian's alleged failure to purchase common area insurance.

"In federal courts, Massachusetts law governs the preclusive effect of prior Massachusetts state court judgments."  *DaCruz-Crossely v. U.S. Bank Nat'l Assoc.*, 926 F. Supp. 2d 405, 407 (D. Mass. 2013) (citing *Giragosian v. Ryan*, 547 F.3d 59, 63 (1st Cir. 2008); *McDonough v. City of Quincy*, 452 F.3d 8, 16 (1st Cir. 2006)).  Under Massachusetts law, "[t]here are three essential elements for claim preclusion: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.'"  *Id.* at 408 (quoting *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005)).  As to the second element, causes of action are identical if they arise out of the same transaction or series of transactions.  *See id.*

> "What factual grouping constitutes a transaction is to be determined pragmatically, giving weight to such factors as whether the facts are related in time, space and origin or motivation …."  Claim preclusion bars litigation even if the plaintiff is prepared to present different evidence or legal theories in the second case.  "Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts."

*Id.* (quoting *McDonough*, 452 F.3d at 16 (quoting *Mancuso v. Kinchla*, 806 N.E.2d 427, 438 (Mass. App. Ct. 2004)); citing *Massaro v. Walsh*, 884 N.E.2d 986, 990 (Mass. App. Ct. 2008); also quoting *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1st Cir. 2008)).  Generally, "[c]auses of action are considered identical for these purposes if they are based on 'the same transaction, act, or agreement, and seek[] redress for the same wrong.'"  *Ajemian v. Yahoo!, Inc.*, 987 N.E.2d 604, 610 (Mass. App. Ct. 2013) (quoting *Fassas v. First Bank & Trust Co. of Chelmsford*, 233 N.E.2d 924, 925 (Mass. 1968) (quoting *Mackintosh v. Chambers*, 190 N.E.2d 38, 39 (1934))).

To the extent Defendants rely on the action that remains pending in the Berkshire Superior Court, they have not shown the essential element of a prior final judgment on the

merits.  So long as that case remains pending, it does not bar this action based on claim

preclusion.  *See, e.g., DaCruz-Crossely*, 926 F. Supp. 2d at 408.

While the Suffolk County action did result in entry of a judgment of dismissal with

prejudice and might have preclusive effect, *see, e.g., Tuite & Sons, Inc. v. Shawmut Bank, N.A.*,

686 N.E.2d 1050, 1053-54 (Mass. App. Ct. 1997), Defendants fail to appreciate that the

complaint in the instant action seeks relief based solely on the special assessment and the process

by which it was imposed.  In the instant action, as the court reads the complaint, Plaintiff does

not seek to recover for damages to the bakery premises, equipment, or business losses.  In

contrast, a majority of the claims in the Suffolk County lawsuit were brought against Peerless

Insurance Company, which had issued a casualty policy to Plaintiff and its related entities that

covered damage to the bakery's equipment and business losses.  The claims against Gian as

Manager of MPCA and Trustee of the MPNT in the Suffolk County lawsuit were also for alleged

damages to, and losses incurred by, the bakery that operated in Unit 5 of the Morningside Plaza

building (Dkt. No. 46-5).

In contrast, Plaintiff has defined the nature of the case at bar as one that seeks a

declaratory judgment that the special assessment is either void or assessed in bad faith and seeks

damages for Defendants' alleged failure to properly notify Plaintiff of the MPCA meeting so that

he could participate in MPCA's management (Complaint at 1).  Plaintiff's references in this case

to Gian's failure to obtain common area insurance are a basis for its contention that the

attorneys' fees that are part of the special assessment would not have been incurred had Gian

acquired common area insurance and thus been defended by an attorney paid by an insurer when

Plaintiff brought suit to recover for the damage to the bakery and its business (Complaint at 4, ¶¶

12-13).  *See Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 76 N.E.3d 204, 208-09 (Mass. 2017)

(stating that an insurer has a duty to pay defense costs incurred in connection with a claim on which it has a duty to defend its insured).

Because the special assessment was not voted on until after the dismissal of the Suffolk County case, any claims seeking relief based on its imposition could not have been brought in that case. In other words, there is no common nucleus of operative facts in the instant case and the Suffolk County case. *See Kobrin*, 832 N.E.2d at 634-35 (concluding that where the board of registration in medicine had previously dismissed disciplinary charges against a doctor, claim preclusion did not bar the board's subsequent proceedings against the doctor that were based on different conduct); *Ajemian*, 987 N.E.2d at 610-11 (denying dismissal based on claim preclusion where the parties had agreed to limit the purposes and claims of the initial action between them, and the prior suit did not encompass the subject matter of the second suit). Accordingly, claim preclusion does not operate to bar any of Plaintiff's claims in the instant action.[5]

### 2. The *Blood* Rule

Gian asserts that Plaintiff's claims are all "barred by the common law pre-requisite to suit set forth in *Blood v. Edgar's, Inc.*" (Dkt. No. 44 at 4). In *Blood*, the Massachusetts Appeals Court held that

> [i]n view of the importance placed by the Legislature on prompt collection of common expenses, we conclude that in the context of the condominium act, absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses. Self-help remedies, such as withholding condominium common expense assessments, are not available.

632 N.E.2d at 421. "A unit owner may not challenge common expenses by refusing to pay them, but, instead, should pay under protest and then seek a judicial determination of the legality of the

---

[5] Because the court concludes that claim preclusion does not bar Plaintiff's claims in this action, it need not, and does not, reach Plaintiff's argument that Defendants failed to plead the doctrine as an affirmative defense.

assessment, as well as suitable reimbursement." *Drummer Boy Homes Ass'n, Inc. v. Britton*, 47 N.E.3d 400, 404 n.10 (Mass. 2016) (citing *Blood*, 632 N.E.2d 419; *Trs. of the Prince Condo. Trust v. Prosser,* 592 N.E.2d 1301, 1302 (Mass. 1992)). "Even where a common assessment is wrongfully made, 'absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses.'" *Wellington Condo. Trust v. Pino*, 686 F. Supp. 2d 117, 120–21 (D. Mass. 2010) (quoting *Blood*, 632 N.E.2d at 421).

A threshold question for determining whether the *Blood* rule operates to bar suit when a unit holder challenges a common expense assessment is "whether the [amount]s assessed … are lawfully characterized as 'common expenses.'" *Trs. of Beacon on the Charles Condo. Trust v. Adler*, 28 Mass. L. Rptr. 231, 2011 WL 1565799, at *2 (Mass. Sup. Ct. Apr. 12, 2011). A portion of the special assessment at issue was to cover the costs of repairing the roof and repaving the parking area (Dkt. No. 66-6 at 1-4). Under the Agreement, the costs of repair to such common areas are appropriately charged as common expenses on a unit ownership pro rata basis (Agreement 7.1.2 at 14). Although Plaintiff appears to be challenging the entire special assessment, it has not contended that these expenses are not properly characterized as common expenses of the MPCA under the terms of the Agreement.

As to the legal fees included in the special assessment, under Massachusetts law, attorneys' fees incurred by a condominium association can be assessed as a common expense. Chapter 183A, the Condominium Act, vests a condominium association with the "rights and powers" to "conduct litigation and be subject to suit as to any course of action involving the common areas and facilities or arising out of the enforcement of the by-laws, administrative rules or restrictions in the master deed." Mass. Gen. Laws ch. 183A, § 10(b)(4). "The expenses incurred … shall be common expenses … ." *Id.* § 10(b). The Agreement provides that common

expenses "shall include amounts deemed appropriate by the Board for … legal and audit expenses of the Condominium Association" (Agreement 7.1.2 at 14-15). Courts in other jurisdictions have held that, when the by-laws so provide, unit owners who sue the trustees may be held liable for the legal costs incurred by the trustees in defending against the unit owners' claims. *See, e.g., Ocean Trail Owners Ass'n, Inc. v. Mead*, 650 So. 2d 4, 5-6 (Fla. 1994) (holding that unit owners could be required to pay special assessment to cover legal costs associated with the condominium board's defense against unit owners' successful claim that a property purchase by the board was beyond the board's authority); *Richstone v. Bd. of Managers of Leighton House Condo.*, 71 N.Y.S.3d 445, 447 (N.Y. App. Div. 2018) (finding that under the by-laws, the condominium board was entitled to recover all of its attorneys' fees that the board incurred in defending claims and asserting a counterclaim against the unit owner).

Most importantly, the Agreement provides that "[t]he Board of Managers and each manager shall be indemnified by the Unit Owners to the extend [sic] of their unit ownership against any liability incurred by them or any one of them in the carrying out of their duties hereunder, including without limiting the generality of the foregoing, liabilities in contract and in tort and liabilities for damages, penalties and fines" (Agreement 3.14 at 7). While the term "indemnity" is not defined in the Agreement, at common law, "'[i]ndemnity … allows someone … compelled by operation of law to defend himself … to recover … the entire amount of his loss, including reasonable attorney's fees.'" *Ferreira v. Chrysler Group LLC*, 13 N.E.3d 561, 567 (Mass. 2014) (quoting *Elias v. Unisys Corp.*, 573 N.E.2d 946, 948 (Mass. 1991)); *see also Amoco Oil Co., Inc. v. Buckley Heating, Inc.*, 495 N.E.2d 875, 876 (Mass. App. Ct. 1986) (rescript) ("when a right to indemnity is conferred, by written contract or otherwise, the indemnitee may recover reasonable legal fees and costs incurred in resisting a claim within the

compass of the indemnity").  The Agreement, moreover, protects a manager from personal liability for any action taken or omitted in his capacity as manager, except for "willful acts in bad faith" (Agreement 3.12 at 6; Dkt. No. 59, ¶¶ 3-4).

There may be limits under Massachusetts law on the circumstances in which a condominium association or its manager would be entitled to recover attorneys' fees it incurred in a dispute with a unit owner.  For example, in *Board of Trustees of Sea Grass Condo. v. Bergquist*, 2009 Mass. App. Div. 132, 2009 WL 1900424, at *1 (Mass. Dist. Ct. App. Div. June 25, 2009), the appellate division of the state district court declined to give effect to a provision in the condominium agreement that provided that a unit owner who sued the trustees for any reason, including a reason such as illegal discrimination, would be liable for the trustees' attorneys' fees. The court called the provision "potentially jarring and unfair." *Id.* at *6.  Here, however, while Plaintiff raises various contentions purportedly challenging the validity of the special assessment, he does not present a cogent argument that the provisions in the Agreement that limit a manager's liability or provide for his indemnification in the absence of fraud or bad faith are fundamentally unfair and unenforceable.  Accordingly, the court concludes that the legal fees at issue may, in theory, be recoverable from the unit owners in the form of a special assessment and turns to the question of whether Plaintiff's suit can proceed when he has admittedly not paid that assessment.

Plaintiff's first argument is that he has satisfied the *Blood* rule as "refined" by *Wodinsky v. Kettenbach*, 22 N.E.3d 960, 970 (Mass. App. Ct. 2015), by filing a "suit seeking injunctive relief" (Dkt. No. 55).  Plaintiff misapprehends the court's analysis in *Wodinsky*.  In that case, before litigation commenced, the unit owners forwarded a check to the condominium board for the full amount of the special assessment; in the name of the board, the check was rejected.  *Id.* at

972. Then, the defendants, in the name of the board, filed suit against the unit owners to collect the special assessment. When the unit owners, as plaintiffs, subsequently filed their own action to contest collection of the alleged common expenses, their complaint was accompanied by a motion for equitable relief in the form of a preliminary injunction, which motion was granted. The injunction "barred the [defendants] from further pursuing [collection of the common expenses], thus constituting precisely the type of 'prior judicial determination' needed to satisfy *Blood.*" *Id.* (*quoting Blood*, 632 N.E.2d at 422). Not surprisingly, in light of this sequence of events, the *Wodinsky* court concluded that the *Blood* rule did not bar the plaintiffs' claims.

Here, however, while the complaint states a claim for injunctive relief, Plaintiff never moved for a preliminary injunction until *after* Defendants filed their summary judgment motion. Plaintiff never tendered payment of the special assessment; Plaintiff filed first (and Defendants have not asserted a counterclaim seeking recovery of the special assessment in this action); and Plaintiff did not obtain (and, as is set forth below, has not shown it is entitled to) a preliminary injunction barring the special assessment. Thus, Plaintiff is not similarly situated to the *Wodinsky* plaintiffs and has not shown that the *Wodinsky* case provides him with a basis for avoiding the *Blood* rule. *See Wellington*, 686 F. Supp. 2d at 120–21 ("Even where a common assessment is wrongfully made, "absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses." (quoting *Blood, Inc.,* 632 N.E.2d at 421)); *Forty-Three Kingston St. Condo. Ass'n v. Bedfordor Ltd. P'ship*, 853 N.E.2d 220, 2006 WL 2506249, at *1 (Mass. App. Ct. 2006) (unpublished) (stating that where there is "no prior judicial determination of illegality, set-off and other self-help remedies are not available, and [a unit owner's] claim is barred"); *Trs. of Hunters Vill. Condo. Trust v. Gerke*, 2007 Mass. Dist. Ct. App. Div. 23, 2007 WL 959539, at *3 (Mass Dist. Ct. App. Div. Mar. 28, 2007) (stating that

16

absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses in order to challenge them).

Plaintiff offers two additional reasons why his suit is not barred by the *Blood* rule. First, he claims that the assessment is invalid due to inadequate notice of the Managers' meeting. Second, he asserts that the special assessment constitutes an improper retroactive assessment. *See Gerfman Global, LLC v. Kershaw*, 33 Mass. L. Rptr. 341, 2016 WL 3145720, at *2 (Mass. Super. May 17, 2016). The first of these reasons verges on frivolous. The parties' dispute about whether the notice complied with the Agreement is beside the point where it is undisputed that counsel for Defendants offered to convene a second Managers' meeting, following notice in compliance with the Agreement's provisions, at which the topic of the special assessment would be discussed anew and voted upon with the time for payment of any special assessment running from the date of the second meeting (Dkt. No. 44-10). In these circumstances, even if the Agreement's notice provision was violated – a point on which the court expresses no opinion – Plaintiff did not suffer any material prejudice from the alleged defect in delivery of the notice. *See Gerfman*, 2016 WL 3145720, at *2 n.2 (declining to address the issue of the Board's alleged failure to provide proper notice where the plaintiff was not materially prejudiced by not receiving notice or being present at any vote of the condominium trustees). To rule otherwise would be to reward gamesmanship.

Proceeding to the more substantive of Plaintiff's two contentions, the court also finds Plaintiff's reliance on the *Gerfman* case unavailing. In *Gerfman*, the plaintiff challenged a common expense assessment by defendant trustees of the condominium association. The plaintiff, a commercial entity, owned a unit in a mixed-use condominium comprised mainly of residential units. The common expenses of the association were classified in two categories: the

residential common elements (RCE) assessed only to the residential units and the condominium common elements (CCE) assessed to all units. *Gerfman*, 2016 WL 3145720, at *1. For over a decade, certain expenses, including hazard insurance premiums, had been assessed only as RCE. In 2013, the trustees decided to reapportion certain expenses, including the costs of hazard insurance, and allocate those expenses to all units as CCE. Rather than making this change prospectively, the trustees "retroactively reallocated several items previously allocated as RCE expenses such that they were now CCE expenses and … retroactively assess[ed] [the plaintiff] for the amounts that [it] should have been assessed" for the previous years. *Id.* at *2. The trustees then demanded that the plaintiff pay over $600,000 in common expenses.

The *Gerfman* court held that, to the extent the plaintiff was challenging the reapportionment on a prospective basis, the plaintiff's claims were barred by *Blood* because the plaintiff had not paid the special assessment. *Id.* at *4. The court, however, found that the *Blood* rule did not bar the plaintiff's challenge to the retroactive assessments because under the Condominium Act and the condominium's master deed, trust, or by-laws, the trustees could not, as a matter of law, retroactively reallocate expenses. *Id.* at *2-3.

> The Declaration of Trust … directs the Trustees to estimate expenses and assess unit owners their proportionate share of these expenses in a forward looking manner based on a budget for the coming year. If the Trustees find that their estimates were understated, they again address the matter by making an additional current assessment, having in mind *future* unmet expenses.

*Id.* at *3. Similarly, the Condominium Act envisions a prospective process for determining common expenses. *See* Mass. Gen. Laws ch. 183A, § 6(a) ("Common expense assessments must be made at least annually, based on a budget adopted at least annually in accordance with the master deed, trust, or by-laws."). For these reasons, the *Gerfman* court held that "the Trustees

[could] not engage in retroactive reapportionment of expenses and then make a retroactive assessment based on the reallocation." *Id.* at *4.

Plaintiff contends that the portion of the special assessment that covers legal fees for the Suffolk County and Berkshire County cases is the kind of retroactive reapportionment and assessment that was prohibited by *Gerfman* (Dkt. No. 55 at 3). Assuming without deciding that *Gerfman*, a Massachusetts Superior Court case, carries persuasive force in this court,[6] it does not apply to the case at bar. First, the costs of the roof and parking area repairs fall within the annual fiscal cycle provided for in the Agreement (Agreement 7.1, 7.1.2 at 13-14) and implied in the Condominium Act and are not reasonably characterized as retroactive. As to the portion of the special assessment attributable to legal fees, it is undisputed that Gian was named as a defendant in the Suffolk County litigation in his capacity as Manager of the MPCA and Trustee of the MPNT (Dkt. No. 44-5); that the claims against him in his capacity as a Trustee were dismissed (Dkt. No. 59, ¶ 18 at 6); and that the Suffolk action was dismissed with prejudice as to all defendants, including as to Gian as Manager of the MPCA. Judgment entered on March 17, 2017 (Dkt. No. 59, ¶ 19 at 7). It further undisputed on this record that Gian personally incurred substantial legal fees in connection with defending the Suffolk action in which he was never

---

[6] When a federal trial court sits in diversity, "[s]tate trial court rulings provide guidance but are not controlling unless they are treated as precedents within the state itself." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 169 (D. Me. 2004) (citing 19 Charles A. Wright, Arthur R. Miller & Edward Cooper, *Federal Practice & Procedure* § 4507, at 96 (1982)); *see also In re PHC, Inc. Shareholder Litig.*, 894 F.3d 419, 428 (1st Cir. 2018) (a federal court sitting in diversity and faced with an issue of first impression should "'consult the types of sources that the state's highest court would be apt to consult, including analogous opinions of that court, decisions of lower courts in the state, precedents and trends in other jurisdictions, learned treatises, and considerations of sound public policy'" (quoting *Butler v. Balolia*, 736 F.3d 609, 613 (1st Cir. 2013)); *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 72 (1st Cir. 2017) (noting that a state trial court decision is at most persuasive, but is not binding on a federal court).

adjudged to have undertaken any "willful acts in bad faith" as Manager of the MPCA (Agreement 3.12 at 6), thereby entitling him to indemnification from Plaintiff in its capacity as a unit owner to the extent of its unit ownership (Agreement 3.14 at 7; Dkt. No. 42-1 at 77-78; Dkt. No. 48 at 7). That the legal fees may have been incurred over a three-year period is immaterial. Gian's right to indemnification under the Agreement did not accrue until in or around March 2017 when the Suffolk County action was dismissed with prejudice without any finding of bad faith or willful misconduct on Gian's part. *See Spellman v. Shawmut Woodworking & Supply, Inc.*, 840 N.E.2d 47, 54 (Mass. 2006) (stating that an indemnification provision does not apply until it is shown that the indemnitee is entitled to indemnification). Thus, the portion of the special assessment for legal fees, due to be paid by May 1, 2017, was not an assessment of a retroactive common expense that might have been disallowed under *Gerfman*.[7]

Plaintiff has not mounted an argument opposing so much of Defendants' summary judgment motion as seeks judgment on Plaintiff's claim in Count VII for an accounting, which, it may fairly be inferred, is directed principally at legal bills and invoices paid by Gian in this and in related litigation between these parties (Dkt. No. 55). Accordingly, any such argument is waived. *See Eldridge v. Gordon Brothers Grp.*, 316 F.R.D. 12, 27-28 (D. Mass. 2016), *rev'd in part on other grounds*, 863 F.3d 66 (1st Cir. 2017). The parties have conducted discovery in a number of related cases during which Plaintiff could and did request financial records from Defendants. Gian represents that Plaintiff has been provided with copies of all records of the

---

[7] To the extent the special assessment includes a modest measure of legal expenses attributable to the Berkshire County litigation, in the court's view, Gian is not entitled to indemnification for legal expenses incurred in that case unless and until it can be shown that he was not adjudicated to have acted willfully in bad faith as to matters asserted in that case. Because neither Gian nor the MPCA seeks payment of the special assessment by a counterclaim in this action, this fact does not appear material to the court's rulings. Plaintiff does not seek relief based on this minor discrepancy.

MPCA and its bank account (Gian Aff. ¶¶ 10-11 at 2). Plaintiff, through its sole member, attests that Gian has failed to disclose the records related to the legal charges that are the basis of the special assessment (Dkt. No. 67, ¶¶ 7, 11 at 4-5, 6-7). This court has ruled that the attorney-client privilege and/or work product protection apply to the contents of the legal invoices or bills that Gian has paid in view of the fact that the bills reflect legal work being performed to defend against claims asserted by Plaintiff, its member, and related entities (Dkt. No. 52). Where Defendants have not asserted a counterclaim seeking payment by Plaintiff of the special assessment, Plaintiff has not articulated any plausible theory of damages for its accounting claim. In these circumstances, Plaintiff's accounting claim should be dismissed without prejudice to its right to seek review of legal invoices in any action in which Gian in any capacity seeks to recover part or all of the special assessment from Plaintiff, its member, or its related entities. *See Eldridge*, 316 F.R.D. at 28 (granting the defendants summary judgment on the plaintiff's accounting claim where the parties had engaged in extensive discovery, the plaintiff had not articulated damages for its accounting claim, and the plaintiff had not opposed so much of the defendants' summary judgment motion as sought judgment on the accounting claim).

The Defendants' Motion for Summary Judgment will be granted in its entirety and Plaintiff's claims will be dismissed without prejudice for the reasons set forth above. *See id.* at 28; *Blood*, 632 N.E.2d at 421-22; *see also Wellington Condo. Tr.*, 686 F. Supp. 2d at 120-21.[8]

B. <u>Plaintiff's Motion for Preliminary Injunction</u>

---

[8] Plaintiff's opposition to Defendants' Summary Judgment Motion is styled as a cross-motion for summary judgment. Because Plaintiff was obliged to satisfy the prerequisite set forth in *Blood* before bringing claims to challenge the special assessment, it follows that he cannot show he is entitled to summary judgment on his claims. *See generally, e.g., Forty-Three Kingston St. Condo. Ass'n*, 2006 WL 2506249, at *1.

Plaintiff argues that he is entitled to a preliminary injunction "barring the special assessment" on two grounds: (1) "the underlying assessment demanding Plaintiff pay Mr. Gian's **past** attorney fees is 100% barred by the holding in *Gerfman*" (emphasis in original); and (2) Defendants' attorneys have "a hopeless and unwaivable conflict of interest" (Dkt. No. 66 at 2-3).

A court weighs four factors when considering a motion for a preliminary injunction: "1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 75 (1st Cir. 2005) (citing *Matrix Grp. Ltd. v. Rawlings Sporting Goods Co.,* 378 F.3d 29, 33 (1st Cir.2004)). The "'*sine qua non*'" of the analysis is whether Plaintiff is likely to succeed on the merits of his claims. *Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1225 (1st Cir. 1993) (quoting *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993)). "'[I]f the moving party cannot demonstrate that [it] is likely to succeed on [its] quest, the remaining factors become matters of idle curiosity.'" *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2007) (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)) (alteration in original). For the reasons set forth below, Plaintiff has not shown that it is likely to succeed on the merits of its claims.

As to Plaintiff's first argument in support of its motion for a preliminary injunction, for the reasons set forth above, Plaintiff has failed to show a likelihood of success based on the argument that *Gerfman* would preclude a special assessment for purposes of indemnifying Gian for his acts as an MPCA manager on grounds of retroactivity.

Nor has Plaintiff shown a likelihood of success based on his contention that Gian is not entitled to indemnification because the legal fees he incurred were "generated by a group of

lawyers with a hopeless and unwaivable conflict of interest" (Dkt. No. 66 at 3). This contention is akin to a post-judgment motion for disqualification of opposing counsel by Plaintiff and is analyzed accordingly. Under Massachusetts law, "'motions to disqualify must be considered in light of the principle that courts "should not lightly interrupt the relationship between a lawyer and a client."'" *Slade v. Ormsby*, 872 N.E.2d 223, 226 (Mass. App. Ct. 2007) (quoting *G.D. Mathews & Sons Corp. v. MSN Corp.*, 763 N.E.2d 93, 96 (Mass. App. Ct. 2002) (quoting *Adoption of Erica*, 686 N.E.2d 967, 970 (Mass. 1997))); *see also Smaland Beach Ass'n, Inc. v. Genova*, 959 N.E.2d 955, 962-63 (Mass. 2012) (acknowledging the "severe consequences" of stripping a party of its counsel of choice). "The burden … rests on the party seeking disqualification to establish the need to interfere with the relationship." *Steinert v. Steinert*, 897 N.E.2d 603, 605 (Mass. App. Ct. 2008).

In the Suffolk County case, Plaintiff named Gian in his capacities as Manager of the MPCA and Trustee of the MPNT. In the Berkshire County case, Plaintiff has sued Gian personally and in his capacities at Manager of the MPCA and Trustee of the MPNT. Plaintiff has pointed to no case in Massachusetts or any other jurisdiction holding or suggesting that, when a single individual is named in multiple capacities in a lawsuit, a lawyer or a group of lawyers may not represent that single individual in all of the capacities in which he or she is named as a party. On its face, Plaintiff's claim of a hopeless and unwaivable conflict of interest in these circumstances is unpersuasive.

Assuming solely for the sake of argument that Plaintiff has identified a cognizable conflict – a point on which this court is not persuaded – the court "'must be alert that the Canons of Ethics are not brandished for tactical advantage.'" *Id.* (quoting *Serody v. Serody*, 474 N.E.2d 1171, 1174 (Mass. App. Ct. 1985)). "Moreover, 'motions to disqualify by their nature are

intensely fact specific.'" *Slade*, 872 N.E.2d at 226 (quoting *Coke v. Equity Residential Props.*

*Trust*, 800 N.E.2d 280, 284 (Mass. 2003)). Thus, a charge of conflict of interest warrants a

searching factual inquiry by the trial judge before such a motion is allowed. *See Smaland Beach*

*Ass'n, Inc.*, 959 N.E.2d at 963; *Slade*, 872 N.E.2d at 226-27. Simultaneous representation of

clients with potentially adverse interests is not necessarily prohibited. *See Wellman v. Willis*,

509 N.E.2d 1185, 1189 (Mass. 1987); Mass. Sup. Jud. Ct. R. 3:07, R. 1.7 (2019). Finally, a party

must timely assert an alleged conflict of interest on the part of opposing counsel. A party who

could have raised the alleged conflict earlier but waits to the "eleventh hour" may be found to

have waived the right to raise the alleged conflict. *Cf. Demoulas v. Demoulas Super Markets,*

*Inc.*, 703 N.E.2d 1141, 1144-45 (Mass. 1998) (stating that a motion to recuse a judge filed after

trial is presumptively untimely).

Plaintiff is wrong that the purported conflict of interest it has identified on the part of

Defendants' attorneys would be unwaivable, *see* Mass. Sup. Ct. Rule 3:07, R. 1.7; *see also*

*Wellman*, 509 N.E.2d at 1189, and his attempt to raise – and rely upon – this supposed conflict

*after* entry of judgment is prohibitively untimely. Plaintiff "had ample knowledge of [defense

counsel's] representation of [Gian in all his capacities]" from the inception of the Suffolk County

action. *Masiello v. Perini Corp.*, 477 N.E.2d 1020, 1025 (Mass. 1985). By not moving for

disqualification at any time prior to entry of final judgment, Plaintiff precluded the trial judge

from conducting the "searching inquiry" required before a disqualification order properly can

enter. *See, e.g., Smaland Beach Ass'n, Inc.*, 959 N.E.2d at 963 (the framework for ruling on a

disqualification motion requires a "searching review"; reversing the trial court's disqualification

order); *Steinert*, 897 N.E.2d at 606 (stating that speculation is not an adequate basis for a

disqualification order); *Slade*, 872 N.E.2d at 226 (a "searching review" is required by a trial

judge).  Furthermore, Plaintiff's dilatory attempt to rely on this purported conflict to avoid the indemnification provision constitutes the sort of improper tactic that has been criticized by the Massachusetts courts.  *See, e.g., Wessell v. Mink Brook Assocs., Inc.*, 35 N.E.3d 377, 383 (Mass. App. Ct. 2015) (finding that the trial court properly denied the disqualification motion where the motion had all the indications of being an eleventh-hour maneuver designed to delay a trial).  For the foregoing reasons, the court concludes that Plaintiff is not likely to succeed on the merits of the claim that the special assessment is void to the extent it represents legal expenses incurred by Gian (or the MPCA) in defending the Suffolk County case.

There are additional reasons why Plaintiff cannot show that it is likely to succeed on the merits of its claims such that it is entitled to a preliminary injunction.  Moving past Plaintiff's contentions about retroactivity and lack of notice, Plaintiff's primary contention in support of relief is that the special assessment was imposed in bad faith or fraudulently for purposes of foreclosing on the condominium it owns in violation of Chapter 93A (Compl. at 9-10, ¶¶ 29, 33-35).  Plaintiff has not shown that it is entitled a preliminary injunction based on its claims brought pursuant to Chapter 93A because Plaintiff has pointed to no evidence that Gian's acts or alleged misconduct were for a commercial purpose.  *See Wodinsky*, 22 N.E.3d at 969-70 (affirming dismissal of plaintiff's Chapter 93A claim because "the record fail[ed] to show that the [defendant's] actions were motivated by business, rather than personal, reasons").  Plaintiff has not disputed that Gian personally paid the attorneys' fees incurred in connection with defending the lawsuits filed by Plaintiff following the February 19, 2013 damage to the bakery and its business.  While it is undisputed that Plaintiff's unit in the Morningside Plaza building was used for commercial purposes and that Gian operates businesses in the building, any statutory lien on the unit resulting from the special assessment, see Mass. Gen. Laws ch. 183A, §

6(a), will, as a matter of law, be subordinate to the mortgage on Unit 5 held by Plaintiff's commercial lender, Lee Bank (Dkt. No. 66 at 4). *See* Mass. Gen. Laws ch. 183A, § 6(c), second para. (ii) (providing that a statutory lien pursuant to Chapter 183A is subordinate to "a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent"). Plaintiff has pointed to no evidence that Gian or the MPCA has plans to, or could, enforce the lien on Unit 5 and gain control of the premises for commercial purposes. Thus, as in the *Wodinsky* case, "the record fails to show that . . . [Gian's] actions were motivated by business, rather than personal, reasons." 22 N.E.3d at 969.

Plaintiff also has not shown a likelihood of success on the merits of its claims of fraud or a violation of the implied covenant of good faith and fair dealing. Plaintiff claims that the alleged failure to provide adequate notice of the MPCA meeting is evidence of fraudulent intent because Gian knew or should have known where to send Plaintiff's notice of the meeting and that the alleged failure to provide notice in compliance with the Agreement was part of Gian's "fraudulent attempt to wrest control of Unit 5" from Plaintiff by means of the special assessment (Complaint at 9, ¶ 33). To prevail on a claim for fraud, a plaintiff must "prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" *Danca v. Taunton Sav. Bank*, 429 N.E.2d 1129, 1133 (Mass. 1982) (quoting *Barrett Assocs. v. Aronson*, 190 N.E.2d 867, 868 (Mass. 1963)). There is no evidence in the record to support Plaintiff's allegations of a misrepresentation made "with knowledge of its falsity" about the reason for the association meeting or the decision to issue the special assessment. Plaintiff offers nothing more than speculation and inuendo (Dkt. No. 67). Further, as is set forth above, Plaintiff's claims arising

from an alleged lack of notice verge on frivolous where plaintiff refused to accept defense counsel's offer to reschedule the MPCA meeting.

Because Plaintiff has failed to show that it is likely to succeed on the merits as to the contentions it raises in support of its motion for a preliminary injunction barring the special assessment, the motion will be denied.

IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 43) is GRANTED.  Plaintiff's claims are dismissed WITHOUT prejudice.  Plaintiff's Motion for Preliminary Injunction (Dkt. No. 64) is DENIED.  The Clerk's Office is directed to close the case on the court's docket.

It is so ordered.

Dated:  June 18, 2019                        /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             U.S. MAGISTRATE JUDGE